IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONAL FAIR HOUSING ALLIANCE,
ET AL.,

        Plaintiffs,

  v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION ("FANNIE MAE"),

        Defendant.

_____/

No. C 16-06969 JSW

**ORDER DENYING IN PART AND
GRANTING IN PART FANNIE
MAE'S MOTION TO DISMISS**

Now before the Court is the motion to dismiss filed by Defendant Federal National

Mortgage Association ("Fannie Mae"). Having considered the parties' arguments, relevant

legal authority, the Court hereby DENIES IN PART and GRANTS IN PART Fannie Mae's

motion to dismiss.

**BACKGROUND**

Plaintiffs National Fair Housing Alliance, Inc., Fair Housing Advocates of Northern

California, Connecticut Fair Housing Center, Denver Metro Fair Housing Center, Fair Housing

Center of Central Indiana, Fair Housing Center of the Greater Palm Beaches, Fair Housing

Center of West Michigan, Fair Housing Continuum, Inc., Greater New Orleans Fair Housing

Action Center, HOPE Fair Housing Center, Housing Opportunities Made Equal of Virginia,

Housing & Research Advocacy Center, Miami Valley Fair Housing Center, Metro Fair Housing

Services, Inc., Metropolitan Milwaukee Fair Housing Council, North Texas Fair Housing

Center, Open Communities, South Suburban Housing Center, and Toledo Fair Housing Center

(collectively "Plaintiffs") here allege that, after the housing crisis in 2008, in violation of the Fair Housing Act, Fannie Mae failed to perform basic maintenance on foreclosed properties it suddenly owned in minority neighborhoods around the country, even while it did perform routine maintenance on properties it came to own in predominantly white neighborhoods.

When a home mortgage owned by Fannie Mae goes into default and foreclosure, Fannie Mae obtains the title to the home and, after a completed foreclosure sale, the home is referred to as "Real Estate Owned" or "REO." (Complaint ¶ 4.) As a result of the housing crisis, Fannie Mae obtained title to a "significant number of REO dwellings covered by the Fair Housing Act." (*Id.*) Once an REO property, Fannie Mae "assumes all duties and responsibilities of ownership, including ordinary maintenance, while it markets the dwelling for sale to the general public." (*Id.* ¶ 5.) Fannie Mae's stated strategy is to "maintain each property in [its] inventory at a level of market-readiness both inside and outside of the property, supporting neighborhood stabilization." (*Id.*) The stated mission of the maintenance team is "to ensure the quality of our REO property maintenance services, consistently producing best-in-class, market-ready properties and maintaining them until removal from our inventory." (*Id.*)

Plaintiffs allege that Fannie Mae is required, under the Fair Housing Act, to maintain all REO properties, regardless of their location, "without regard to race, color, . . . or national origin." (*Id.* ¶ 7.) Between July 2011 and October 2015, Plaintiffs allege that they "conducted a comprehensive investigation of [Fannie Mae]'s real estate related activities in communities of color, including predominantly African-American and Latino neighborhoods, and predominantly white neighborhoods in 38 metropolitan areas throughout the United States." (*Id.* ¶ 3.) Plaintiffs allege that over the course of four years, they investigated over 2,300 properties owned and maintained by Fannie Mae, and accumulated over 49,000 photographs. (*Id.* ¶ 7.) Plaintiffs allege that their investigation revealed that "Fannie Mae has failed to conduct routine exterior maintenance and marketing of REO properties in communities of color, thereby leaving those REOs in a state of neglect, while satisfactorily conducting routine exterior maintenance and marketing of its REO properties in predominantly white neighborhoods, therefore leaving those REOs in a materially better condition." (*Id.* ¶ 8.)

Although Plaintiffs alerted Fannie Mae regarding the findings of their investigation in order to secure voluntary compliance with the Fair Housing Act, Plaintiffs allege that Fannie Mae "did not change its behavior. With deliberate indifference to the purpose and effects of its discriminatory policies and practices, Fannie Mae continued to maintain its REO properties differently based on the predominant race and national origin of neighborhoods." (*Id.* ¶ 19.) As a result of these practices, Plaintiffs allege that "Fannie Mae stigmatizes communities of color as less desirable than predominantly white neighborhoods. The prospects for integration in the affected neighborhoods are reduced because white buyers are deterred from purchasing homes in neighborhoods with poorly maintained REO properties, leaving the existing segregated racial composition of these neighborhoods unchanged." (*Id.* ¶ 23.)

Plaintiffs, a collection of twenty-one fair housing community organizations, allege that they have expended considerable resources and time away from their other projects and programs and have forgone other opportunities in an effort to address the effects of Fannie Mae's conduct. Plaintiffs set out in detail the frustration of their mission and purpose in the diversion of resources to address Fannie Mae's alleged conduct and remediation. (*Id.* ¶¶ 142-150, 152-247.) In addition, Plaintiffs further allege that the "discriminatory conduct extends beyond Plaintiffs, also harming the communities Plaintiffs serve. Defendant's failure to maintain REO properties in communities of color has created deteriorating eye sores and depressed property values in communities of color, undermining neighborhood stabilization, and curtailing economic recovery." (*Id.* ¶ 248.)

Plaintiffs filed suit to allege violation of the Fair Housing Act which makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race or national origin. (*Id.* ¶ 261, citing 42 U.S.C. § 3604(b).) Plaintiffs allege that Fannie Mae's conduct discriminates in the marketing and sale of dwellings to persons because of race or national origin. (*Id.*) Plaintiffs allege that Fannie Mae has "designed a national practice and policy of having its lower-level agents and employees determine whether to conduct an REO exterior maintenance task and how to conduct it. Fannie Mae's practice thus gave these agents

1    and employees the ability to exercise high levels of discretion with minimal input from Fannie

2    Mae. [This] practice and policy . . . ha[s] caused a disproportionately adverse impact on

3    communities of color." (*Id.* ¶ 128.) This unguided delegation of discretion without independent

4    quality checks "resulted in REO properties in communities of color receiving less exterior

5    maintenance than REO properties in predominantly white neighborhoods. The observed

6    disparities persist even after a regression analysis for non-racial factors." (*Id.* ¶ 131.)

7         The complaint is replete with allegations that the maintenance decisions were delegated

8    to low-level employees and agents to decide when and how maintenance tasks would be

9    undertaken. Plaintiffs allege that Fannie Mae did not specify when exterior REO maintenance

10   should be performed, where in contrast, "Fannie Mae provided detailed instructions to its agents

11   with regard to other REO services, including directing them to perform tasks on a monthly

12   basis." (*Id.* ¶ 129.) The complaint details Fannie Mae's practices which allowed for little or

13   any knowledge of whether properties actually required exterior maintenance and their failure to

14   perform independent quality control on the majority of the properties. (*Id.* ¶ 130.) Plaintiffs

15   also detail how, after a report by the Office of the Inspector General of the Fair Housing

16   Finance Agency criticized Fannie Mae's quality control protocol, "noting that there was

17   'significant risk' that it would be insufficient to assess the quality of REO maintenance

18   activities over a sustained period of time," Fannie Mae still did not alter its practices. (*Id.*)

19        Plaintiffs further allege that the data from their investigation establishes that "the

20   exterior maintenance of REO properties under Fannie Mae's maintenance practices and policies

21   varied based on the age and/or the value of the properties." (*Id.* ¶ 132.) Plaintiffs allege that

22   "Fannie Mae's maintenance policies and practices are the direct and proximate cause of the

23   statistical disparities in the maintenance of properties in the neighborhoods with different racial

24   and ethnic compositions as alleged [in the complaint] and revealed by Plaintiffs' investigation."

25   (*Id.* ¶ 76.)

26        After a temporary stay of the case, Fannie Mae moved to dismiss all claims pursuant to

27   Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and pursuant to Rule

28

12(b)(1) for failure of Plaintiffs to establish standing.  The Court shall address other specific facts as necessary in the remainder of its order.

## ANALYSIS

**A.      Applicable Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 544.  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.      Organizational Standing.**

Fannie Mae seeks dismissal of Plaintiffs' complaint for lack of organizational standing. For purposes of ruling on a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.").

In order to allege organizational standing under Article III, plaintiffs must demonstrate "(1) frustration of its organizational mission; and (2) diversion of its resources to combat" defendant's alleged wrongful conduct. *See Smith v. Pacific Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (citing *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). In brief, plaintiffs must allege "a concrete and demonstrable injury to its activities, not simply a setback to the organization's abstract social interests." *Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136, 1138 (N.D. Cal. 1999). Standing under the Fair Housing Act is liberal as "Congress intended standing under the FHA to extend to the full limits of Article III." *Walker v. City of Lakewood*, 272 F.3d 1114, 1123 (9th Cir. 2001) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)). Allegations that a fair housing organization must devote significant resources to identifying and counteracting discriminatory practices, thus requiring the diversion of resources from the organization's counseling and referral services is sufficient to establish sufficient injury to allege organizational standing. *See Havens Realty*, 455 U.S. at 379 (holding that "[s]uch concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests.") (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).

Here, Plaintiffs adequately allege diversion of their resources and frustration of their mission. (*See* Complaint ¶¶ 142-150, 152-247.) Accordingly, at the pleading stage, Plaintiffs' allegations are sufficient to establish organizational standing.

## C.    Fair Housing Act Claim.

The Fair Housing Act was enacted in response to the 1960s period of "considerable social unrest" and to respond to "both open and covert racial discrimination prevent[ing] black families from obtaining better housing and moving to integrated communities." *Texas Department of Housing and Community Affairs v. The Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2516 (2015) ("*Inclusive Communities*").  In response, President Lyndon Johnson established the National Advisory Commission on Civil Disorders which identified residential segregation and the importance of unequal housing and economic conditions as underlying causes of social unrest. *Id.* The Commission further noted that "[o]ur Nation is moving toward two societies, one black, one white – separate and unequal." *Id.* (citing Report of the National Advisory Commission on Civil Disorders 1, 91 (1968)).  In order to reverse "[t]his deepening racial division," the Commission recommended enactment of a "comprehensive and enforceable open-occupancy law making it an offense to discriminate in the sale or rental of any housing . . . on the basis of race, creed, color, or national origin." *Id.*

Section 804 of the Fair Housing Act makes it unlawful to "otherwise make unavailable or deny, a dwelling to any person because of race [or] national origin." 42 U.S.C. § 3604(2). The regulations promulgated by the United States Department of Housing and Urban Development provide in pertinent part that "[i]t shall be unlawful because of race [or] national original . . . to discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. § 100.70(a).  Such acts "include, but are not limited to: (1) discouraging any person from inspecting, purchasing, or renting a dwelling . . . because of the race [or] national origin . . . of persons in a community, neighborhood, or development." 24 C.F.R. § 100.70(c)(1).  A disparate impact claim serves not only "to uncover unconscious or consciously hidden biases, but also targets 'artificial, arbitrary, and unnecessary barriers' to minority housing and integration that can occur through unthinking, even if not malignant, policies of developer and governmental entities." *Ave. 6E Investments, LLC v. City of Yuma, Arizona*, 818 F.3d 493, 203 (9th Cir. 2016) (citing *Inclusive Communities*, 135 S. Ct. at 2522).  It is in this way that disparate impact claims "recognize that the arbitrary quality of thoughtlessness can be as

disastrous and unfair to private rights and the public interest as the perversity of a willful

scheme." *Id.* (citing *United States v. City of Black Jack, Mo.*, 508 F.2d 1179, 1185 (8th Cir.

1974)).

Disparate impact liability under the Fair Housing Act "can be proven under a burden-

shifting framework analogous to that used in employment discrimination cases: the plaintiff

must plead a prima facie case of discrimination, the defendant may rebut by presenting non-

discriminatory reasons for the challenged policy, and the plaintiff bears the ultimate burden of

persuasion." *Nat'l Fair Housing Alliance v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 28

(D.D.C. 2017) (citing 24 C.F.R. § 100.500(c); *Inclusive Communities*, 135 S. Ct. at 2522-23).

Under the rubric of the *Inclusive Communities* decision, to establish a prima facie case of

disparate treatment, plaintiffs must show more than a statistical disparity; they must instead

demonstrate that defendant's policy or policies cause that disparity. 135 S. Ct. at 2523. "A

robust causality requirement ensures that '[r]acial imbalance . . . does not, without more,

establish a prima facie case of disparate impact' and thus protects defendants from being held

liable for racial disparities they did not create.'" *Id.* (citing *Wards Cove Packing Co. v. Atonio*,

490 U.S. 642, 653 (1989)).  The Court must "examine with care whether a plaintiff has made

out a prima facie case of disparate impact and prompt resolution of these cases is important.  A

plaintiff who fails to allege facts at the pleading stage or produce statistical evidence

demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.*

Fannie Mae argues that Plaintiffs fail to make out a prima facie case of disparate impact

because they have failed to identify a cognizable policy or practice that they allege causes the

discrimination in housing.  Fannie Mae contends that the policy identified by Plaintiffs –

delegation of discretion or failure to supervise and differential maintenance based on the

properties' age and value – is insufficient as a matter of law.  Fannie Mae argues that the mere

delegation of authority over decisions regarding maintenance is insufficient as a policy to

withstand dismissal.  However, the Court finds this argument unpersuasive. *See, e.g,*

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 488-90 (7th Cir.

2012) (holding that company-wide policy delegating discretion and allowing members to chose

8

their own teams was sufficient basis to state a potential claim for disparate impact based on race); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 531-33 (N.D. Cal. 2012) (holding that company-wide practice of abandoning normal hiring procedures and removing safeguards for hiring, may be the basis for claim of sex discrimination); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357 (2011) ("'[I]n appropriate cases,' giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory – since 'an employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination.'") (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 990-91 (1988)). At this procedural posture, the Court finds that Plaintiffs have sufficiently alleged facts to support their theory that the policy of delegation of discretion or failure to supervise and differential maintenance based on the properties' age and value as the robust cause of discriminatory impact. *See Nat'l Fair Housing Alliance*, 261 F. Supp. 3d at 28-29.

Second, Fannie Mae contends that, regardless of the policy stated, Plaintiffs have failed to pled sufficient facts tending to show causation. The Court finds, however, that Plaintiffs have sufficiently alleged statistical evidence demonstrating a causal connection between the delegation of duties and the differential maintenance. Ultimately, "the question of causation – to what extent the discrepancy is explainable by objective data or race – is premature. It seems clear that Plaintiff's complaint gives rise to a fair inference of causation; the question of proof will become an issue at later stages in the proceedings." *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 259 (D. Mass. 2008). Considering the breadth and extensive coverage of the investigation, Fannie's Mae's contentions regarding whether the Plaintiffs' methodology is flawed are best reserved for resolution at summary judgment. The Court finds the specific contentions about alleged deficiencies in methodology go to the weight of the evidence and are not dispositive of the determination whether Plaintiffs have adequately pled discrimination at this procedural stage. *See, e.g., Maduka v. Sunrise Hospital*, 375 F.3d 909, 912-13 (9th Cir. 2004) (holding that Federal Rule of Civil Procedure 8 applies to pleading requirements for discrimination at the motion to dismiss stage).

Third, Fannie Mae argues that Plaintiffs have alleged facts that would fall outside the statute of limitations time period – earlier than May 12, 2013 – two years before Plaintiffs filed their administrative claim before the Department of Housing and Urban Development.  *See* 42 U.S.C. § 3613(a).  Plaintiffs allege a continuing violation of the Fair Housing Act on the basis of a policy and practice that extends beyond the statute of limitations period, although it clearly includes conduct during the actionable time period.  There is "no legal bar to the use of pre-liability period evidence in this case."  *Ellis*, 285 F.R.D. at 528 (citations omitted).  "[P]re-statute of limitations data is generally both relevant and frequently used in such matters as evidence of the alleged discriminatory practice, even when a plaintiff may not directly recover as to events occurring outside the applicable time period."  *Id.* (citing *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012)) ("It is well established . . that so long as it least 'one alleged adverse employment action . . . occurred within the applicable filing period[,] . . . evidence of an earlier alleged [discriminatory] act may constitute relevant 'background evidence in support of [that] timely claim.'") (internal citations omitted).  Based on the Court's review of the allegations, the factual background facts outside of the limitations period may relevant even when they do not form the basis for independent liability and are not grounds for dismissal.

Lastly, in its motion to dismiss on other grounds, Fannie Mae essentially assumes that Plaintiffs did not intend to allege a disparate treatment claim.  (Motion at 19 n.3.)  However, in response, Plaintiffs contends that the complaint repeatedly alleges that Fannie Mae intentionally discriminates based on race.  In order to show disparate treatment based on race, "a plaintiff must establish that the defendant was *motivated* to discriminate against the plaintiff on the basis of race."  *Garcia v. Country Wide Financial Corp.*, 2008 WL 7842104, at *7 (C.D. Cal. Jan. 17, 2008) (citing *AFSCME v. State of Washington*, 770 F.2d 1401, 1406-07 (9th Cir. 1985) (emphasis in original)).  "Where a plaintiff challenges a defendant's policy, the plaintiff must establish that the defendant implemented the policy 'because of, and not merely in spite of,' its adverse effect on the protected group."  *Id.* (citing *Personnel Administrator of Massachusetts v.*

*Feeney*, 442 U.S. 256, 279 (1979)).  "Proof of discriminatory motive is crucial to a disparate treatment claim."  *Gamble v. City of Escondido*, 104 F.3d 300, 305-06 (9th Cir. 1997).

In response, Plaintiffs indicate that there are multiple allegations in the complaint regarding their observations of "differing treatment" and "differing maintenance" throughout the various neighborhoods.  (*See* Complaint ¶¶ 9, 11, 13, 14, 62, 67, 73, 75, 77, 78, 89.)  However, the allegation of differing treatment, while providing support for a disparate impact claim, does not necessarily indicate a discriminatory motive.  *See, e.g., Thomas v. San Francisco Housing Authority*, 2017 WL 878064, at *4-5 (N.D. Cal. Mar. 6, 2017) (dismissing disparate treatment claim on the basis that impact-related allegations do not suffice to allege intentionally discriminatory conduct); *see also Hamilton v. Lincoln Mariners Assocs. Ltd.*, 2014 Wl 5180885, at *5 (S.D. Cal Oct. 14, 2014) (holding that dismissal was proper where the complaint failed to allege sufficient factual material to permit the inference that defendants' action were "more likely than not motivated by discriminatory criteria").  The Court finds that the allegations as currently pled do not create an inference of discriminatory intent.  Accordingly, the motion to dismiss as to the disparate treatment claim is GRANTED.

## CONCLUSION

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART the City's motion to dismiss the Complaint.  Although the Court finds that the allegations regarding a disparate treatment claim are insufficient to state a claim, the Court grants Plaintiffs leave to amend.  *See, e.g., Reddy*, 912 F.2d at 296.  Plaintiffs shall file an amended complaint, if any, within twenty days of the date of this Order.  If Plaintiffs file an amended complaint in accordance with this Order, Fannie Mae shall file its response within twenty days of service of the amended complaint.

**IT IS SO ORDERED.**

Dated:   March 21, 2018

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

11