UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"),<br><br>Defendant. | Case No. 16-cv-06969-JSW   (JSC)<br><br>**ORDER REGARDING MARKETING MATERIALS DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 117 |

Now pending before the Court is a joint discovery dispute letter. (Dkt. No. 117.) Plaintiffs seek to compel Fannie Mae to search for and produce marketing-related materials beyond those Fannie Mae already agreed to produce. After carefully considering the parties' letter and the pleadings, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and rules as set forth below.

## DISCUSSION

Plaintiffs insist that the materials sought "are plainly relevant to Plaintiffs' claims that Fannie Mae harmed communities of color through its REO management, including its marketing of REO properties." (Dkt. No. 117 at 2.) The materials sought would be relevant to such claims, but as the FAC is currently pled, and as the district court has interpreted the FAC, Fannie Mae is not making those broad marketing claims.

The FAC's "Introduction and Summary of Claims" describes Plaintiffs' claims as challenging Fannie Mae's maintenance of the foreclosed homes. (Dkt. No. 39 ¶¶ 3, 6-16, 18-19, 21-24, 26.) The "Introduction and Summary of Claims" cannot reasonably be read as describing Plaintiffs' claims as challenging Fannie Mae's marketing of the properties separate from the

maintenance issue. The district court also interprets the FAC as alleging that "Fannie Mae failed to perform basic maintenance on foreclosed properties it suddenly owned in minority neighborhoods around the country, even while it did perform routine maintenance on properties it came to own in predominantly white neighborhoods." (Dkt. No. 70 at 2.) To the extent Plaintiffs disagree with the district court's interpretation of the claims is this nearly five-year old case, Plaintiffs must raise that issue with the district court. For purposes of discovery, this Court interprets the claims as set forth in the FAC's Summary of Claims and the district court's orders.

With that interpretation in mind, the Court addresses Plaintiffs' requests. After various meet and confer efforts, Plaintiffs reduced their demands to three areas, each of which, they contend, Fannie Mae rejected. The Court considers each in turn.

1. Plaintiffs seek "policies and procedures applicable to vendors responsible for Fannie Mae REO property maintenance, as well as Fannie Mae's procedures for maintenance vendor management." As evidence of this request they identify Ex. B at 7, D. Oakley letter. (Dkt. No. 117 at 3a.) That letter, however, states that "Fannie Mae *will produce* its policies and procedures applicable to vendors responsible for Fannie Mae REO property maintenance, as well as Fannie Mae's procedures for maintenance vendor management." (Dkt. No. 117-2 at 4 (emphasis added).) Unless Fannie Mae has backtracked from what it promised, there is no dispute here. Fannie Mae shall produce all policies and procedures applicable to vendors responsible for maintenance, whatever those policies are. If they apply to the maintenance vendors, then they should be produced as agreed.

2. Plaintiffs also seek additional fields related to marketing from two REO databases, Equater and Trax. In particular, the "Initial Marketing Plan" information field, as well as fields identifying whether a property is being marketed "as is" or on "as repaired" basis and information on "as is" and "as-repaired" valuations. Plaintiffs do not explain how the "Initial Marketing Plan" field relates to their claims and what they expect it would reveal. However, whether property is being marketed "as is" or "as repaired" and the valuations for each could tend to support Plaintiffs' claims that Fannie Mae did not perform needed maintenance disproportionately on properties in communities of color and that such lack of maintenance harmed those communities

1  by reducing property values, among other consequences.  For example, if more properties are
2  being marketed "as is" in those communities that arguably reinforces Plaintiffs' theory of the case.
3  So while the Court agrees that marketing separate from maintenance might not be at issue, how a
4  property is marketed can be relevant to the poor maintenance clams.  As Fannie Mae does not
5  articulate any burden in producing the three fields as opposed to two fields, Plaintiffs' motion to
6  compel production of the "Initial Marketing Plan" fields as well as the "as is" and "as repaired"
7  fields discussed above is granted.

8       3.     The third dispute regards Fannie Mae's search terms.  The Court declines to grant
9  Plaintiffs' request as it appears to be premised on its too broad view of its claims.

10  This Order disposes of Docket No. 117.

11  **IT IS SO ORDERED.**

12  Dated: March 9, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge